UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ULISES CORRALES VEGA,

                Petitioner,

v.

CONNIE HORTON,

                Respondent.

_____/

Case No. 2:19-cv-61

Honorable Janet T. Neff

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.    Factual allegations

Petitioner Ulises Corrales Vega is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Ingham County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, and carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226. On February 26, 2016, the court sentenced Petitioner to respective prison terms of 25 to 50 years and 23 to 60 months.

On February 16, 2019, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on February 16, 2019. (Pet., ECF No. 1, PageID.15.)

The petition raises four grounds for relief, as follows:

I.    [PETITIONER] WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE COURT REFUSED THE REQUEST TO INSTRUCT THE JURY ON MANSLAUGHTER, AND WHEN THE OTHER RELEVANT INSTRUCTIONS WERE NOT GIVEN.

II.   [PETITIONER] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN THE ACCIDENT INSTRUCTION WAS NOT REQUESTED, IN LIGHT OF [PETITIONER'S] TESTIMONY THAT HE KILLED THE COMPLAINANT UNINTENTIONALLY, AND THE VOLUNTARY INTOXICATION INSTRUCTION WAS NOT GIVEN IN FULL.

III.  [PETITIONER] WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE JURY REQUESTED HIS TESTIMONY AND MR. MCCONNELL'S TESTIMONY, AND THE COURT PROVIDED MR. MCCONNELL'S TESTIMONY FIRST, WITHOUT ANY INPUT FROM TRIAL COUNSEL AS TO THE PROCESS.

IV.   [PETITIONER] WAS DENIED EFFECTIVE ASSISTANCE [OF] COUNSEL WHEN TRIAL COUNSEL FAILED TO ADEQUATELY INVESTIGATE AND MASTER THE FACTS OF THE CASE THERE BY

DENYING [PETITIONER] HIS SIXTH AMENDMENT RIGHT TO COUNSEL AND TRIAL.

(Pet., ECF No. 1, PageID.5, 7, 9, 11.)

Petitioner has filed a brief, outlining the facts presented at trial. While Petitioner includes certain additional facts, his statement is fully consistent with the factual summary set forth in the opinion of the Michigan Court of Appeals:

Defendant's convictions arise from the June 12, 2015 fatal stabbing of Phineas Oliver. Defendant and his neighbor, William McConnel,[1] had been drinking alcohol and barbequing throughout the afternoon of June 11 before retiring to their respective apartments. Later that night, they returned to their shared porch and resumed drinking. At some point, Oliver and a companion approached defendant and McConnel; it appears that all four men knew each other. At Oliver's request, McConnel retrieved a bottle of whisky from his apartment. Oliver took the bottle, "hit the bottom of it," and asked McConnel if he would help him "knock the devil out of the bottle." McConnel acquiesced by "smack[ing]" the bottle. Oliver extended the bottle to defendant for the same purpose. When defendant "slapped the bottle," it fell from Oliver's hand and "cracked" when it landed on the porch. McConnel testified that Oliver asked defendant, "why did you do that, why did you spill Bill's whiskey[?]"

Defendant testified that he decided that it was time for Oliver and his companion to leave. Defendant retrieved a "sword" from his living room with the intention of "trying to confirm [with Oliver]: Go home." Defendant said that he only intended to "pinch" Oliver with the sword and was "very surprised" when "everything went in." McConnel testified that he observed defendant holding the sword with one hand on the handle and one hand on the blade and that "the sword thrust into [Oliver's] chest" and was "held there" by defendant before being "yanked out." McConnel said that defendant looked shocked and told him to call 911. The medical examiner testified that Oliver died of a stab wound to the chest that was approximately seven inches deep.

Defendant initially told police that he had found Oliver lying in the street. Defendant also initially denied that a sword was involved in the stabbing and denied that there was any blood in his apartment. Police followed a "blood trail" from Oliver to defendant's apartment where they found what was described as a "2-foot long Samurai sword" with what appeared to be blood on its tip. Police also discovered what appeared to be blood in defendant's bathroom sink. Defendant eventually admitted to having stabbed Oliver but claimed that the stabbing was

---

[1] The Michigan Court of Appeals spells the witness' name as "McConnel," while Petitioner spells the name "McConnell." This Court hereafter will use the spelling given in the court of appeals' opinion.

accidental. Oliver's DNA was found on the sword blade and handle, while defendant's DNA was found on the sword's handle.

Defense counsel requested jury instructions on voluntary and involuntary manslaughter. The trial court found that neither instruction was supported by the evidence. The jury was instructed, with regard to defendant's specific intent to kill Oliver, that it was not a defense that defendant was intoxicated by alcohol or drugs that he had voluntarily and knowingly consumed.

The jury was excused to begin deliberations on January 25, 2016. The trial court convened the next day at 1:31 p.m., after the jury verdict had been reached but before the verdict was announced on the record. The trial court stated on the record that at "9:30" the jury had requested "'[a]ctual testimony of Mr. Vega and neighbor Bill[.']" The trial court stated that the court reporter "start[ed] to compile that testimony" and that "the testimony of Mr. McConnel was completed" "about 12, 12:30 . . ." at which point the transcript was given to the jury. The trial court said that "work was [then] started on [defendant's] testimony" but that

> [d]uring the interim . . . at 11:33, the jury requested what they referred to as a transcript of the 9-1-1 call. And we gave them the actual call. That was played in the jury room, I assume. But they got that information.
>
> And when the first transcript was completed, Mr. McConnel, we gave that to the jury while waiting for the completion of [defendant's] [t]ranscript. And it appears that the jury reached their verdict prior to receiving Mr. Vega's transcript.

Defense counsel moved for a mistrial, arguing that McConnel's testimony was over-emphasized because the jury had received only the transcript of his testimony (and not that of defendant) before rendering its verdict. Defense counsel noted that "[i]f I would have had the opportunity to have input in the process by which we give these transcripts, which I didn't, I would have told the Court to give both transcripts at the same time." "By not giving [defendant's] transcript at all," counsel argued, "it seems unfair and prejudicial."

The trial court, acting on the assumption that the as-yet-unknown jury verdict was for a conviction, denied defendant's motion for a mistrial, noting that "[t]he Jury can make their decision at any time." The court said that "historically, we have always given the transcripts to the jury as they're completed" and that "time is a factor here, judicial economy is a factor here." After an off-the-record discussion, defense counsel noted that the jury's written requests showed that "[t]hey first wanted to see [defendant's] transcript." The court explained that the transcripts "were prepared in the order that they testified. So that's why Mr. McConnel was first." The court also reasoned that "[o]nce they've reached the standard of beyond a reasonable doubt, I don't see how there is any undue prejudice."

4

(Mich. Ct. App. Op., ECF No. 1, PageID.58-60.)

On January 26, 2016, the jury found Petitioner guilty of second-degree murder and use of a dangerous weapon with unlawful intent. The trial court sentenced Petitioner to respective prison terms of 25 to 50 years and 23 to 60 months.

Petitioner appealed to the Michigan Court of Appeals, raising the same four grounds presented in his petition. In an opinion issued on October 17, 2017, the court of appeals rejected all appellate grounds and affirmed the convictions. (Mich. Ct. App. Op., ECF No. 1, PageID.58-65.) Petitioner sought leave to appeal to the Michigan Supreme Court, again raising the same four grounds. The supreme court denied leave to appeal on May 1, 2018. (Mich. Order, ECF No. 1, PageID.67.)

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

5

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.     Ground I:  Instructional Errors

Petitioner was charged with open murder. The jury found that he was not guilty of first-degree murder, but guilty of second-degree murder. Petitioner argues that the trial court violated his due process rights by refusing to instruct the jury on the lesser-included offenses of voluntary and involuntary manslaughter. He also argues that the court improperly removed the second paragraph from the standard jury instruction on intoxication being a defense to a specific-intent crime. In addition, Petitioner contends that the trial court erred when it failed to instruct the jury on the defense of accident.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009) (rejecting claim of ambiguous instruction on accomplice liability); *Henderson*, 431 U.S. at 152 (upholding verdict

despite failure to give causation instruction); *Estelle*, 502 U.S. at 74-75 (finding no due process violation in the use of evidence of other bad acts for showing intent, identity, motive or plan); *see also Levingston v. Warden*, 891 F.3d 251, 254-55 (6th Cir. 2018) (rejecting habeas relief on the grounds that the instructions permitted the use of hearsay evidence as substantive evidence).

With respect to Petitioner's claim that the trial judge should have given instructions on the lesser-included offenses of voluntary and involuntary manslaughter, Petitioner fails to demonstrate entitlement to relief. The Sixth Circuit Court of Appeals, sitting en banc, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc). The *Bagby* Court held that failure to instruct on lesser-included offenses in a noncapital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure. *Id.*; *accord Tegeler v. Renico*, 253 F. App'x 521, 524 (6th Cir. 2007); *Todd v. Stegal*, 40 F. App'x 25, 28-29 (6th Cir. 2002); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Samu v. Elo*, 14 F. App'x 477, 479 (6th Cir. 2001); *Williams v. Hofbauer*, 3 F. App'x 456, 458 (6th Cir. 2001). Shortly after the Sixth Circuit decision in *Bagby*, the Supreme Court emphasized that the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief. *Estelle*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)). Instead, the only question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (quoting *Cupp*, 414 U.S. at 14). Here, there is no miscarriage of justice or fundamental defect in due process. Furthermore, no clearly established Supreme Court authority requires lesser-included offense instructions in non-capital cases. Thus,

under the AEDPA, 28 U.S.C. § 2254(d)(1), Petitioner's claim concerning the lesser-included offenses is not a basis for habeas relief. *Todd*, 40 F. App'x at 28 (citing *Estelle*, 502 U.S. at 71-72).

To the extent that Petitioner claims that the court erred in not reading the second paragraph of the Michigan Standard Jury Instruction 6.2, Petitioner's claim is solely one of state law. No decision by the United States Supreme Court entitles Petitioner to such an instruction. Moreover, the Michigan Court of Appeals decided the state-law claim against Petitioner:

> Defendant also argues that the trial court erred by not giving M Crim JI 6.2, titled "Intoxication As a Defense to a Specific Intent Crime," in its entirety. This argument is also waived because defendant expressed satisfaction with the instructions read to the jury. *Kowalski*, 489 Mich. at 504-505. Regardless, the trial court did not err by omitting the second paragraph of that instruction, which provides as follows:
>
> > (2) The defendant is not guilty of [state charge] if the defendant proves by a preponderance of the evidence that [he / she] lacked the intent to [state required specific intent] because [he / she] voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that [he / she] would become intoxicated or impaired as a result. [M Crim JI 6.2.]
>
> A trial court is only required to read the "[p]ertinent portions" of a model jury instruction. MCR 2.512(D)(2). In this case, there was no evidence presented at trial to show that defendant did not know and reasonably should not have known that he would become intoxicated or impaired by consuming alcohol or any other substance. Therefore, paragraph (2) was not applicable to this case and the trial court did not err by omitting it from the jury instructions. Viewing the jury instructions as a whole, "they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Kurr*, 253 Mich. App. at 327. Reversal is not required. *Id.*

(Mich. Ct. App. Op., ECF No. 1, PageID.61.)

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See*

*Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). Because the court of appeals determined that Petitioner was not entitled to the second paragraph of the intoxication instruction, this Court is bound by that decision.

Finally, Petitioner's claim that the trial court erred when it failed to give an instruction on the defense of accident does not entitle him to habeas relief. The Michigan Court of Appeals rejected his claim:

> Defendant further argues that the trial court erred by not giving an instruction on the defense of accident. Defendant did not request that instruction and he expressed satisfaction with the instructions given to the jury. Accordingly, he has waived this argument. *People v. Kowalski*, 489 Mich. 488, 504-505; 802 N.W.2d 200 (2011). In any event, defendant fails to explain how this instruction would have led to a different outcome. See *People v. Houthoofd*, 487 Mich. 568, 590; 790 N.W.2d 315 (2010). Because the evidence showed that defendant purposefully stabbed Oliver, the lack of an accident instruction did not result "in a miscarriage of justice." MCL 769.26.

(Mich. Ct. App. Op., ECF No. 1, PageID.61.) In other words, the court of appeals concluded that the claim was waived and, in the alternative, was harmless, because the evidence clearly showed that Petitioner intentionally stabbed the victim.

The United State Supreme Court has never held that the failure to give an accident instruction violates due process. Petitioner therefore fails to demonstrate that he was constitutionally entitled to such an instruction.

Moreover, even if an accident instruction were constitutionally required, Petitioner would not be entitled to habeas relief because the lack of an accident instruction was harmless. Habeas petitioners "are not entitled to relief based on trial error unless they can establish that it

resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 at 637 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

In the instant case, Petitioner testified that he did not intend to kill the victim and that the sword's plunging entry into the victim was the result of accident. The jury, however, implicitly rejected Petitioner's testimony when it concluded that Petitioner had the requisite malice to be guilty of second-degree murder. As the court of appeals recognized, in holding that Petitioner was not entitled to an instruction on involuntary manslaughter, accident was inconsistent with the facts presented at trial:

> Defendant argues that his testimony that he did not intend to stab Oliver, but merely to "pinch" him, and that it was an "accident," was evidence of gross negligence supporting an involuntary manslaughter instruction. Defendant, who admitted that he was intoxicated to the point that "[m]aybe" he could not "drive a car," retrieved a sword from his apartment following an altercation with Oliver, and stated that his intended purpose was to induce Oliver to leave. McConnel testified that "the sword [was] thrust into [Oliver's] chest" and "held there" before being "yanked out." McConnel answered affirmatively when asked if the thrusting motion made by defendant was "forceful" and "powerful." McConnel's testimony that defendant forcefully stabbed Oliver was confirmed by the medical examiner who testified that the stab wound to Oliver's chest was approximately seven inches deep. A rational view of the evidence compels the conclusion that defendant purposefully, rather than negligently, stabbed Oliver in the chest.

(Mich. Ct. App. Op., ECF No. 1, PageID.60-61.) The state court's factual findings are entitled to a presumption of correctness, which Petitioner utterly fails to challenge, much less overcome by

clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407 n.4. The court of appeals held that the facts failed to support a finding of negligence. Where the facts fail to support a finding of negligence, they necessarily fail to support a finding of accident. As a consequence, the failure to give an accident instruction could not have had an effect on the verdict.

In sum, Petitioner fails to demonstrate that the Michigan Court of Appeals' decision denying his multiple jury-instruction claims was either contrary to or an unreasonable application of clearly established Supreme Court precedent. He therefore is not entitled to relief on his first habeas ground.

IV. Grounds II & IV: Ineffective Assistance of Counsel

In Ground II of his habeas application, Petitioner argues that trial counsel was ineffective in failing to request an accident instruction and failing to object to the exclusion of the second paragraph of the "Intoxication As a Defense" instruction. In Ground IV, Petitioner argues his trial attorney rendered ineffective assistance when he failed to adequately investigate the facts of the case. Specifically, Petitioner argues that he used a different sword than the one presented to the jury and that counsel's discovery or development of the requisite facts would have led to a different result. The Michigan Court of Appeals rejected all three of Petitioner's claims of attorney error.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

With respect to Petitioner's claim that counsel was ineffective in failing to object to the exclusion of the second paragraph of the intoxication instruction, Petitioner's claim of ineffective assistance of counsel is foreclosed by the state court's determination that he was not entitled to the instruction. Thus, any objection by counsel would have been futile. Counsel's

failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

With respect to Petitioner's claim concerning counsel's failure to request an accident instruction, Petitioner also is not entitled to relief. Even if he could overcome the presumption that counsel's decision to not request an accident instruction was within the range of professionally competent assistance, he cannot demonstrate that he was prejudiced by any error. The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*,] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].") Given this Court's finding that Petitioner was not prejudiced by the lack of an accident instruction, counsel's failure to request the instruction was not prejudicial. As a consequence, Petitioner is not entitled to habeas relief on the claim raised in Ground II of his petition.

In Ground IV of his habeas application, Petitioner asserts that his trial attorney was ineffective in failing to investigate and determine that the sword identified as the murder weapon was the wrong sword. Petitioner argues that he did not use the samurai sword entered into evidence as the murder weapon, but he instead used a double-edged sword. He contends that his attorney's failure to investigate and/or master the evidence showing that a different sword was used amounted to ineffective assistance of counsel, because a double-bladed sword would have been more likely to "accidentally" pierce the skin and penetrate several inches into the body.

The Michigan Court of Appeals had little difficulty rejecting Petitioner's claim:

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." See *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). In order to demonstrate prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

* * *

Defendant also argues via a Standard 4 brief that defense counsel was ineffective for failing to investigate the evidence supporting his testimony that the prosecution did not have the correct murder weapon. A sword recovered from defendant's bedroom was admitted into evidence as the murder weapon. McConnel testified that he observed defendant stab Oliver with that sword. Indeed, Oliver's DNA was found on the sword's blade and handle. The medical examiner opined that Oliver's wound was consistent with the blade of the sword. Despite the substantial evidence showing that the sword was the murder weapon, defendant testified that he used a different sword, a "double edged" sword, to stab Oliver. But even if defendant's counsel failed to investigate and look for evidence to support defendant's testimony, defendant has not shown that such a failure was objectively unreasonable. The identity of the murder weapon was of marginal relevance given that defendant admitted to being the cause of Oliver's death. Defendant argues that evidence pertaining to the double-edged sword could have improved his credibility with the jury. Considering the evidence showing that defendant purposefully stabbed Oliver, we conclude that there is not a reasonable probability that evidence

relating to the other sword would have led to a different outcome. *Carbin*, 463
Mich at 599-600.

(Mich. Ct. App. Op., ECF No. 1, PageID.63.) The standard of review applied by the court of

appeals was fully consistent with the *Strickland* standard, and the principal case on which the court

relied expressly applied *Strickland. See People v. Carbin*, 623 N.W.2d 884, 889 (Mich. 2001).

It is well established that "[c]ounsel has a duty to make reasonable investigations

or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*,

466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make

the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S.

365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to

investigate all witnesses who may have information concerning his or her client's guilt or

innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a

particular decision not to investigate must be directly assessed for reasonableness in all the

circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466

U.S. at 691.

However, a court "cannot conclude that [] counsel was deficient solely on [the

petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that

"sheer speculation" of inadequate investigation does not state a claim). "It should go without

saying that the absence of evidence cannot overcome the 'strong presumption that counsel's

conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571

U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689).

Here, Petitioner utterly fails to provide any evidence beyond his simple say-so to

demonstrate that a different sword was used. He identifies no facts that would contradict the

evidence recited by the court of appeals—McConnel's testimony about the sword that was used,

the testimony that the victim's blood was found on the handle and blade of the samurai sword, and the medical examiner's testimony that the wound was consistent with the samurai sword. Thus, Petitioner fails to demonstrate any basis for concluding that his attorney failed to investigate and discover the correct weapon.

Further, as the court of appeals held, Petitioner cannot demonstrate prejudice arising from the alleged attorney error. Petitioner did not deny that he stabbed the victim with a sword. The particulars of the sword were essentially irrelevant to this central fact. Moreover, the fact that the witness saw Petitioner forcefully push the sword into the victim with both hands and hold it in, the fact that the sword penetrated seven inches, and the fact that Petitioner initially lied about his involvement all strongly support the conclusion that Petitioner intentionally stabbed the victim. Under these circumstances, no reasonable probability exists that a jury would have come to a different decision about Petitioner's guilt if the sword was double-edged, rather than single-edged.

For these reasons, Petitioner's claims of ineffective assistance of counsel are meritless, even were this Court to consider the question de novo. Petitioner therefore necessarily fails to overcome the double deference owed to the state court's rejection of his fourth habeas ground.

V.    Ground III:  Denial of Counsel During Critical Stage of Proceedings

In his third habeas claim, Petitioner argues that he was denied his rights to due process and to counsel, when the trial court received and responded to a message from the jury outside the presence of counsel. Specifically, when the jury requested the transcripts of the testimony of both Petitioner and McConnel, the judge directed the court reporter to prepare McConnel's testimony first, followed by Petitioner's testimony, apparently because of the order in which the witnesses appeared at trial. When McConnel's transcript was complete, but before

Petitioner's transcript was finished, the trial court made McConnel's transcript available to the jury. The jury reached its verdict before receiving Petitioner's transcript. Petitioner contends that he was denied his right to counsel during a critical stage of the proceedings, in violation of *United States v. Cronic*, 466 U.S. 648 (1984).

The denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. *See Cronic*, 466 U.S. 648. The court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003).

In *Bell v. Cone*, 535 U.S. 685, the Supreme Court defined the differences between claims governed by *Strickland* and claims governed by *Cronic*. *See Henness v. Bagley*, 644 F.3d 308, 323-24 (6th Cir. 2011) (citing *Bell*, 535 U.S. at 695-96); *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007); *Mitchell*, 325 F.3d at 742). If a claim is governed by *Strickland*, a defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial (or caused him to plead guilty). If a claim is governed by *Cronic*, on the other hand, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. *Mitchell*, 325 F.3d at 742 (citing *Bell*, 535 U.S. at 695); *see Woods*, 135 S. Ct. 1378 ("*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'") (quoting *Cronic*, 466 U.S. at 658). Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to

meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Henness*, 644 F.3d at 323-24 (citing *Bell*, 535 U.S. at 695-96); *see also Ivory*, 509 F.3d at 294; *Mitchell*, 325 F.3d at 742.

Considering the claim under both *Cronic* and *Strickland*, the Michigan Court of Appeals denied Petitioner's claim:

> The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." US Const, Am VI. "The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration." *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). "The complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal." *People v Russel*, 471 Mich 182, 194 n 29; 684 NW2d 745 (2004); see also *United States v Cronic*, 466 US 648, 659 n 25; 104 S Ct 2039; 80 L Ed 2d 657 (1984).
>
> Defendant "asserts that he was denied counsel at a critical stage" when the trial court decided how it would provide the requested testimonies to the jury "without any input" from defense counsel, and that he therefore is not required to demonstrate prejudice. We disagree. A trial court's ex parte communications with the jury must be categorized as "substantive, administrative, or housekeeping" before determining whether such a communication was a critical stage of the proceeding. *People v France*, 436 Mich 138, 163; 461 NW2d 138 (1990); see also *Hudson v Jones*, 351 F3d 212, 216-218 (CA 6, 2003). Communications concerning the availability of evidence are administrative in nature and are not a critical phase of the proceedings that carries the presumption of prejudice. *France*, 436 Mich at 143-144. We conclude that to the extent the trial court engaged in a communication with the jury by providing, in response to its notes, the transcripts as they became available, the communication was administrative in nature and did not implicate the concerns raised in *Cronic*. See *France*, 436 Mich at 165 (finding communications by a bailiff with the jury as the result of the trial court's grant of the jury's requests to review evidence, as well as those that resulted from the trial court's refusal of the jury's requests to review evidence, "come within the category of administrative communication."); see also *Peoples v Lafler*, 734 F 3d 503 (CA 6, 2013).
>
> Further, the record reveals that defense counsel was given an opportunity to object to the jury's receipt of McConnel's testimony before defendant's testimony became available, to move for a mistrial, and to preserve a record for appellate review. We are therefore not convinced that, even if we were to find the challenged portion of the proceedings to be a critical phase of the proceedings, defendant could

be said to have suffered "the complete denial of counsel." *Russel*, 471 Mich at 194 n 29; see also *Cronic*, 466 US at 659.

Apart from his *Cronic* argument (which requires no showing of prejudice, *Cronic*, 466 US at 659), defendant also asserts that "his substantial rights were adversely affected" by the trial court's provision of the transcripts to the jury as they became available. However, defendant does not explain how he was actually prejudiced by the trial court's actions such that the trial court should have granted defendant's motion for a mistrial. Defendant has therefore abandoned this argument. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Further, even if we were to consider defendant's argument, we would find no such prejudice on the record before us. We review for an abuse of discretion a trial court's decision to grant or deny a mistrial. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). A mistrial should be granted only if "an irregularity that is prejudicial to the rights of defendant" occurs and "impairs his ability to get a fair trial." *Id.* (citations omitted). We note that a trial court has broad discretion when responding to a jury's request to review testimony during deliberations. See MCR 2.513(P). The trial court explained that McConnel's testimony was prepared first because he had testified before defendant. That decision was not an abuse of discretion because it was within "the range of principled outcomes." *Musser*, 494 Mich at 348. And the record evidence against defendant strongly supports the jury's verdict; nothing in the record leads us to believe that the simultaneous provision of McConnel's and defendant's word-for-word testimony in written form would have altered the outcome of the proceedings. Defendant's request for a mistrial was therefore not premised on a prejudicial irregularity, and the trial court did not abuse its discretion in denying it. *Haywood*, 209 Mich App at 228.

(Mich. Ct. App. Op., ECF No. 1, PageID.63-65.)

In *Bourne v. Curtin*, 666 F.3d 411 (6th Cir. 2012), the Sixth Circuit considered how *Cronic* applies to ex parte communications between a judge and jury. In *Bourne*, the trial judge, without consulting with counsel, denied the jury's request to re-hear the testimony of five witnesses. Instead, the court instructed the jury to rely on its collective memory. *Id.* at 412. Petitioner contended that he had been denied an attorney at a critical stage of the proceeding and

argued that he was entitled to habeas relief under *Cronic*, without the need to prove that he was

prejudiced by the absence of counsel. The Sixth Circuit rejected the *Cronic* claim:

> Bourne contends that communication between the jury and the judge in this case was a critical stage, citing this Circuit's holding in *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), for support. There, the court held that a trial court's delivery, without counsel, of supplemental jury instructions was a critical stage and per se harmful. *Id.* at 434, 436; *cf. Shields v. United States*, 273 U.S. 583, 587-89 (1927) (holding that judge's *ex parte* communication telling a jury it needed to reach a verdict was reversible error without any discussion of harmlessness). Bourne contends the *ex parte* communication here was no different.

> But not all communications between a judge and jury are critical stages— meaning a stage at which there is a "reasonable probability that [a defendant's] case could suffer significant consequences from his total denial of counsel." *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007). In *Rushen*[ *v. Spain*, 464 U.S. 114 (1983)], for example, the Supreme Court said that "the prejudicial effect of a failure" to "disclose the communication [with a juror]" can "normally" be resolved in a post-trial hearing. 464 U.S. at 119. And in *Rogers v. United States* the Supreme Court held that a trial court's *ex parte* response to a jury's question about permissible verdicts was reversible only after extensively analyzing whether the error was harmless. 422 U.S. 35, 40 (1975). Courts have therefore drawn a boundary around the types of judge-jury communications that represent critical stages: "Cases in which this court has found denial of counsel at a critical stage invariably involved a court instructing the jury about the substantive elements of an offense or giving a deadlocked jury further instructions about how to proceed." *Valentine v. United States*, 488 F.3d 325, 335 (6th Cir. 2007); *United States v. Mohsen*, 587 F.3d 1028, 1031-32 (9th Cir. 2009); *United States v. Toliver*, 330 F.3d 607, 614 (3d Cir. 2003). Left outside the boundary are cases like this one, in which the jury asks to review material it had already received during the trial. *See, e.g., Hudson v. Jones*, 351 F.3d 212, 218 (6th Cir. 2003) (the original jury instructions); *Toliver*, 330 F.3d at 617 (excerpt from trial transcript). Thus Bourne is incorrect to argue that the communication in this case was per se harmful.

*Bourne*, 666 F.3d at 413-14.

Here, as in *Bourne*, Petitioner relies upon *French v. Jones*, 332 F.3d 430 (6th Cir.

2003), as support for his claim that communications between the judge and jury during

deliberations is a critical stage of the proceeding and that *Cronic* therefore governs the analysis.

In *French*, the Sixth Circuit found that the provision of supplemental jury instructions to a

deadlocked jury was a critical stage of the proceedings under *Cronic*. *Id.* at 436-39. However, the

*French* court did not hold that all communications between a judge and the jury were subject to *Cronic* review. Indeed, the *French* court expressly distinguished *Rushen v. Spain*, 464 U.S. 114 (1983), in which the Supreme Court applied harmless-error analysis to a trial judge's ex parte communications with a juror about the juror's personal interaction with the police informant currently testifying before the jury. *French*, 332 F.3d at 437-38 (discussing *Rushen*, 464 U.S. at 118-19).

In *Bourne*, 666 F.3d at 413-14, the Sixth Circuit more fully discussed which types of judge-juror communications are critical stages, recognizing that such stages are those "at which there is a 'reasonable probability that [a defendant's] case could suffer significant consequences from his total denial of counsel.'" *Van*, 475 F.3d at 313. Here, as in *Bourne*, the communication involved the "review [of] material [the jury] had already received during the trial." *Bourne*, 666 F.3d at 414 (citing *Toliver*, 330 F.3d at 617). Because the provision to the jury of evidence already admitted at trial was not a critical stage of the proceeding, the Michigan Court of Appeals did not unreasonably apply clearly established Supreme Court precedent in denying Petitioner's assertion that he was entitled to a presumption of prejudice under *Cronic*. *See Shohatee v. Jackson*, 257 F. App'x 968, 970 (6th Cir. 2007) (holding that, because the playback of testimony or the giving of evidence that has already been admitted at trial was not a critical stage of the prosecution, state courts did not act contrary to clearly established federal law in declining to apply the *Cronic* harmless-error presumption); *see also Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969) (mechanical operation of transmittal to the jury of items fully in evidence is a "ministerial activity" that is not a critical stage of the trial for Sixth Amendment purposes).

Petitioner also is not entitled to relief on his suggestion that he was deprived of the effective assistance of counsel, as analyzed under the *Strickland* standard. Despite Petitioner's

argument that the court's handling of the jury's request for certain transcripts had "significant consequences" for him, he utterly fails to identify those consequences beyond stating that it would have "allow[ed] the jury to importantly and equally weigh the decision regarding testimony." (Pet'r's Br. In Supp. of Pet., ECF No. 1, PageID.52.) The argument falls far short of demonstrating prejudice under *Strickland*. As earlier discussed, to meet the prejudice standard of *Strickland*, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The prejudice prong "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner cannot demonstrate that the Michigan Court of Appeals unreasonably applied that standard. The court did not deny the jury's request for both Petitioner's and McConnel's testimony. The fact that the jury received McConnel's testimony and was able to resolve its confusion before receiving the transcript of Petitioner's testimony does not demonstrate the sort of fundamental unfairness that undermines confidence in the verdict. That is particularly true where, as here, the evidence strongly supported the jury's verdict.

Finally, to the extent that Petitioner argues that he was deprived of due process by the process of providing transcripts to the jury, his claim fails because no clearly established Supreme Court precedent supports such a due process challenge. Moreover, in light of the strong evidence supporting the verdict, Petitioner cannot demonstrate that the process resulted in actual prejudice. *Brecht*, 507 U.S. at 637.

For all these reasons, Petitioner fails to demonstrate entitlement to relief on his third habeas ground.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth

by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated: __May 7, 2019__          /s/ Janet T. Neff

Janet T. Neff
United States District Judge